# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

DWAYNE LEBARR,

        Plaintiff,

vs.                                Case No.:    3:20-cv-88-BJD-JBT

THOMAS REIMERS, et al.,

        Defendants.

_____/

## <u>ORDER ON MOTION TO DISMISS</u>

### I.     Status

Plaintiff Dwayne Lebarr, an inmate in the custody of the Florida Department of Corrections, initiated this action on January 27, 2020,[1] by filing a <u>pro se</u> Civil Rights Complaint under 42 U.S.C. § 1983. (Doc. 1, Complaint). He sues Thomas Reimers, the Health Services Director for the Florida Department of Corrections (FDOC), as well as two "Doe" defendants: "John Doe," the regional medical director for FDOC's Fourth Region, and "Jane Doe," the regional medical director for FDOC's First Region. Lebarr alleges that Defendants were deliberately indifferent to a serious medical need – keloid scars – in violation of the Eighth Amendment.

---

[1]     <u>See</u> <u>Houston v. Lack</u>, 487 U.S. 266, 276 (1988) (mailbox rule).

1

Before the Court is Defendant Thomas Reimers's Motion to Dismiss Plaintiff's Complaint (Doc. 22, Motion to Dismiss). Reimers argues that Lebarr failed to exhaust administrative remedies before suing and that Lebarr fails to allege a constitutional violation against him. In response, Lebarr filed a "Motion to Strike Defendant's Motion to Dismiss (Doc. 22) and/or Alternative Response." (Doc. 26, hereafter, "Response"). Lebarr maintains that he did exhaust his administrative remedies, and argues that the Complaint sufficiently alleges that Reimers promulgated policies responsible for Lebarr not receiving recommended surgery to remove keloid scars. Reimers did not seek leave to reply. Thus, the motions are ripe for review.

## II.    Plaintiff's Allegations[2]

On February 16, 2017, Lebarr was involved in an altercation with another inmate in which the inmate struck Lebarr in the side of the face with a weapon. Complaint ¶ 4. Lebarr received prompt medical attention for his injury, resulting in 17 stitches. Id. ¶ 5. About eight months later, on October 11, 2017, Dr. R. Desrosier – a physician at Lebarr's institution – saw Lebarr for the first time since Lebarr's injury. Id. ¶ 6. Lebarr told Dr. Desrosier that his scar, which had developed into a keloid, "was causing great pain and appeared to be constantly growing." Id. ¶ 7. Dr. Desrosier examined Lebarr's face, diagnosed

---

[2]    Because this case is before the Court on a defendant's motion to dismiss, the Court accepts the Complaint's factual allegations as true and construes them in the light most favorable to the plaintiff. Cinotto v. Delta Air Lines, Inc., 674 F.3d 1285, 1291 (11th Cir. 2012).

the keloid as "chronic," and recommended that Lebarr see a general surgeon. Id., ¶ 8. Dr. Desrosier completed a surgical consultation request and sent it for approval to the regional medical director. Id. ¶ 9. A few days later, Defendant John Doe – the regional medical director for the Fourth Region – denied the consultation request. Id. ¶ 10. John Doe (who did not personally evaluate Lebarr) recommended steroid injections as an alternative, which Lebarr was advised would "impede the keloids growth and shrink its size." Id. ¶ 11–12. Lebarr experienced an adverse reaction after his first session of steroid injections, but he was informed that such a reaction was typical. Id. ¶ 13.

Lebarr was later transferred to a different institution, and on May 10, 2018, he sought further medical care. Id. ¶ 14. A physician named Dr. Lopez-Rivera evaluated Lebarr and reached a similar diagnosis about the keloid as Dr. Desrosier. Id. ¶ 15. Like Dr. Desrosier, Dr. Lopez-Rivera recommended that Lebarr see a general surgeon. Id. Dr. Lopez-Rivera completed a surgical consultation request, accompanied by "photographs demonstrating the need" for surgery, and submitted it for approval to the regional medical director. Id. ¶ 16. On May 22, 2018, Jane Doe – the regional medical director for the First Region – denied the request and suggested steroid injections as an alternative treatment, citing the likelihood of the keloid recurring and the mainly "cosmetic" nature of the condition. Id. ¶ 17. Lebarr says he "had no choice but to accept the treatment although knowing it would not help." Id. ¶ 18.

According to Lebarr, by January 10, 2019, his "keloids had quadrupled and a different Doctor submitted a [surgical] Consultation Request acknowledging that the keloids [were] displacing the Plaintiff's earlobe." Id. ¶ 19. On January 21, 2019, Defendant Jane Doe approved the physician's request for a surgical consultation. Id. ¶ 20. Lebarr underwent surgery to remove the keloid later in 2019. (See Doc. 22 at ECF p. 17).

Based on these facts, Lebarr brings three claims for alleged violations of his Eighth Amendment rights. He sues the Defendants, each of whom is an FDOC employee, in his or her individual capacity. Complaint, p. 2. First, Lebarr alleges that Defendant John Doe was deliberately indifferent to a serious medical need because he had the authority to approve Dr. Desrosier's surgical consultation request but denied it. Id. ¶¶ 21–23. Second, Lebarr alleges that Defendant Jane Doe delayed treatment and was deliberately indifferent to a serious medical need because she had authority to approve Dr. Lopez-Rivera's surgical consultation request but denied it as well. Id. ¶¶ 24–27. Lebarr contends that Jane Doe only "reluctantly approved" a surgical consultation "[a]fter the keloids started to displace the plaintiff['s] ear." Id. ¶ 26.

Third, and most relevant to this Order, Lebarr alleges that Defendant Reimers, as the Health Services Director for the FDOC, was himself deliberately indifferent to a serious medical need. Id. ¶¶ 28–30. Lebarr does not claim that Reimers personally participated in deciding Lebarr's treatment.

Instead, according to Lebarr, Reimers was deliberately indifferent "by having policies in place that put strict measure [sic] for the treatment of keloids." Id. ¶ 28. Lebarr states that unnamed medical personnel described surgery for keloids as "cosmetic." Id. ¶ 29. Lebarr alleges Reimers "is responsible for the overall direction for Department of corrections and set the provisional health care provided to inmates." Id. ¶ 30 (sic).

Lebarr asserts that he exhausted his administrative remedies. Id. ¶ 31. As relief, Lebarr requests a jury trial, $2 million in compensatory damages for the "infliction of emotional and mental injuries sustained," and $3 million "in punitive damages for pain and suffering." Id., p. 7. Lebarr also seeks a declaration that the Defendants' actions violated his rights under the United States Constitution, as well as any other relief the Court deems appropriate. Id.

### III.   Motion to Dismiss Standard

Under the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief may be granted." See Fed. R. Civ. P. 12(b)(6). In ruling on such a motion, the court must accept the plaintiff's allegations as true, liberally construing those by a pro se plaintiff, but it need not accept as true legal conclusions. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Though detailed factual allegations are not required, Rule 8(a) demands "more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." Id. A plaintiff should allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).

In resolving a motion to dismiss under Rule 12(b)(6), a court ordinarily considers only the allegations within the four corners of the complaint and documents attached thereto. Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007) (citing Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1368 (11th Cir. 1997)). However, "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment … if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (citing Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir. 1999)). The same applies to a document attached to a plaintiff's response to a motion to dismiss. Sosa v. Hames, 218 F. App'x 976, 978 n.3 (11th Cir. 2007) (citing Horsley, 304 F.3d at 1134; Watson v. Bally Mfg. Corp., 844 F. Supp. 1533, 1535 n.1 (S.D. Fla. 1993)). "'Undisputed' in this context means that the authenticity of the document is not challenged." Horsley, 304 F.3d at 1134.

## IV.   Exhaustion

A threshold issue here is whether Lebarr exhausted administrative remedies, as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a). Reimers argues that the Complaint should be dismissed because

Lebarr failed to exhaust available administrative remedies. Motion to Dismiss at 3–8. Reimers acknowledges that Lebarr exhausted a complaint that a doctor recommended surgery and surgery was denied because later physicians said it was unnecessary. Id. at 7. But Reimers argues that Lebarr failed to exhaust administrative remedies, as it pertains to the claim against him, because none of Lebarr's grievances "raised any allegations that Defendant Reimers' policies limited the Plaintiff's keloid treatment." Id. Therefore, according to Reimers, "[t]he issue regarding any policy of [the FDOC] regarding cosmetic surgery for keloids has not been exhausted." Id.

Lebarr responds that he did properly exhaust his administrative remedies. Response at 3–5. He argues that simply because his grievances "failed to [use] keywords such as 'policies' or the Defendant 'Reimers' by name" does not preclude a finding that he properly exhausted. Id. at 3. Lebarr contends that his grievances were enough to alert prison officials to the problem he was grieving and to allow them to address his keloid treatment. See id at 4–5. On these points, the Court agrees with Lebarr.

The PLRA requires that a plaintiff exhaust available administrative remedies before filing a § 1983 claim about prison conditions. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983...until such administrative remedies as are available are exhausted."); see also Woodford v. Ngo, 548 U.S. 81, 92–93 (2006) (noting that

a prisoner must exhaust administrative remedies before challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). Nevertheless, the plaintiff need not "specially plead or demonstrate exhaustion in [his] complaint[ ]." See Jones v. Bock, 549 U.S. 199, 216 (2007). Instead, the Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id.

Exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). See also Jones, 549 U.S. at 211. While "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford, 548 U.S. at 101, "exhaustion is mandatory... and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (citing Jones, 549 U.S. at 211). The PLRA not only requires exhaustion of administrative remedies, "the PLRA … requires proper exhaustion." Woodford, 548 U.S. at 93 (emphasis added).

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

Id. at 90 (citation omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Id.

In <u>Ross v. Blake</u>, the Supreme Court instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S. Ct. 1850, 1862 (2016). For an administrative remedy to be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" <u>Turner v. Burnside</u>, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting <u>Goebert v. Lee Cnty.</u>, 510 F.3d 1312, 1322-23 (11th Cir. 2007)).

Because failure to exhaust administrative remedies is an affirmative defense, Defendant bears "the burden of proving that [Plaintiff] has failed to exhaust his available administrative remedies." <u>Id.</u> at 1082.

> In <u>Turner v. Burnside</u> we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. <u>Id.</u> Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. <u>Id.</u> at 1082–83; <u>see also</u> <u>id.</u> at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

<u>Whatley v. Warden, Ware State Prison</u>, 802 F.3d 1205, 1209 (11th Cir. 2015) ("<u>Whatley I</u>"). "A prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." <u>Parzyck v. Prison Health Servs., Inc.</u>, 627 F.3d 1215, 1218 (11th Cir. 2010) (citations omitted).

State law "determines what steps are required to exhaust." <u>Dimanche v. Brown</u>, 783 F.3d 1204, 1207 (11th Cir. 2015). Indeed, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." <u>Jones</u>, 549 U.S. at 218. The FDOC provides inmates with a three-step grievance process for exhausting administrative remedies. As the Eleventh Circuit described it:

> The grievance procedure applicable to Florida prisoners is set out in § 33-103 of the Florida Administrative Code. Section 33-103 contemplates a three-step sequential grievance procedure: (1) informal grievance; (2) formal grievance; and then (3) administrative appeal. <u>Dimanche</u>, 783 F.3d at 1211. Informal grievances are handled by the staff member responsible for the particular area of the problem at the institution; formal grievances are handled by the warden of the institution; and administrative appeals are handled by the Office of the Secretary of the FDOC. <u>See</u> Fla. Admin. Code. §§ 33-103.005–103.007. To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits set forth in § 33-103.011, and must either receive a response or wait a certain period of time before proceeding to the next step. <u>See</u> <u>id.</u> § 33-103.011(4).

<u>Pavao</u>, 679 F. App'x at 824.[3] Once a prisoner successfully completes this grievance process, he will have exhausted his administrative remedies. <u>See</u> <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1288 (11th Cir. 2004).

On Lebarr's view of the facts, he properly exhausted administrative remedies before suing, so the Court cannot resolve the exhaustion dispute at step one of the <u>Turner</u> analysis. <u>See</u> <u>Turner</u>, 541 F.3d at 1082. So the Court

---

[3]     The ordinary three-step procedure does not always apply. For example, a prisoner may skip the informal grievance step and immediately file a formal grievance for issues pertaining to certain things, such as medical issues. Fla. Admin. Code § 33-103.006(3)(e).

proceeds to step two of the <u>Turner</u> analysis, remembering that the defendant bears the burden of proving a lack of exhaustion. <u>Id.</u>

Lebarr filed two rounds of grievances related to the treatment he received for keloids (or alleged delay thereof). He began the first round of grievances on June 11, 2019, when he filed an informal grievance. (Doc. 22 at ECF pp. 17–18, Informal Grievance No. 215-1906-0218). Lebarr complained that on October 11, 2017, and May 5, 2018, he visited a doctor for keloids and the doctor recommended a consultation with a general surgeon, but the regional medical director denied the request for a consultation. <u>Id.</u> at 17. Lebarr stated that after January 2019, a surgical consultation request was finally approved and he "recieved [sic] a successful surgery after being denied and delayed recommended treatment." <u>Id.</u> But, "[a]s a result of the inaction by the responsible Chief Doctor," Lebarr asserted that he suffered "extreme chronic pain" and "great emotion[al] and mental distress." <u>Id.</u> at 17. Lebarr concluded: "I believe had the acting authority acted I would have never experience[d] the trauma." <u>Id.</u> at 18. A prison official denied the informal grievance, writing: "Your issue was addressed and surgery was provided. Prior to your surgery being approved, consults were submitted and alternate treatment plans were suggested at those times and surgery was not recommended." <u>Id.</u> at 17.

Lebarr then filed a formal grievance with the assistant warden of Hamilton Correctional Institution on June 19, 2019. <u>Id.</u> at 16 (Formal

Grievance No. 1906-215-194). He argued that the issue he raised was not addressed and that "medical [was] overlooking" his claim. Id. On July 1, 2019, the formal grievance was denied in a response signed by L. Colombani and the assistant warden. Id. at 15. The response stated: "Please be advised, surgery was provided. Consults were submitted requesting a consult with a surgeon and an alternative treatment plan was recommended. Surgery was not recommended at that time." Id.

On July 9, 2019, Lebarr filed an appeal to the FDOC Secretary. Id. at 14 (FDOC Appeal Log No. 19-6-26329). On August 9, 2019, the Bureau of Inmate Grievance Appeals – which handles appeals on behalf of the FDOC Secretary – returned the appeal without action. Id. at 13. The Bureau stated that Lebarr's grievance did not comply with Chapter 33-103 of the Florida Administrative Code because he was "outside the timeframe to grieve this issue." Id. The Bureau indicated that Lebarr did not file the informal grievance within 20 calendar days of when the incident or action being grieved occurred, or that he did not file the formal grievance within 15 calendar days of receiving a response to the informal grievance. This concluded the first round of grievances.

Lebarr initiated the second round of grievances on October 30, 2019, by filing a formal grievance with the assistant warden of Florida State Prison. Id. at 22 (Formal Grievance No. 1910-205-248). Lebarr stated that he had seen a physician (Dr. Baptiste) "as it relates to an ongoing keloid condition." Id. The

gist of the grievance was that Lebarr requested steroid injections because his keloids were returning, but Dr. Baptiste advised that he did not perform steroid injections "and that there wasn't anything he could do to resolve [Lebarr's] medical needs." Id. Lebarr asserted that if Dr. Baptiste would not perform steroid injections, then he should have been referred to "doctors at Lake Butler" who could have provided the injections. Id. The institution denied the formal grievance in a response signed by Dr. G. Espino and the assistant warden. Id. at 21. The response stated that Lebarr had seen a clinician in July, August, September, and October 2019 for follow-up visits for keloids, and that the clinician determined further treatment was not indicated. Id. The clinician discussed alternative treatment plans with Lebarr and recommended on-site monitoring of his condition. Id.

Lebarr filed an appeal to the FDOC Secretary on November 13, 2019. Id. at 20 (FDOC Appeal Log No. 19-6-41750). He stated that he was appealing because he was "being denied medical care [related] to an ongoing medical need." Id. Lebarr mainly argued that he was not receiving appropriate post-operative care following keloid-removal surgery in June 2019. Id. He concluded by stating: "I hate to admit but this is the [illegible] situation [illegible] 'medical' was indifferent to my medical need 2 years ago that resulted in a severe outcome that I could be legally compensated for," referring to the alleged denial of keloid-removal surgery in 2017. Id. On December 20, 2019, the Bureau of Inmate

Grievance Appeals denied Lebarr's appeal, explaining that Dr. Espino's response "appropriately addresse[d] the issue you presented." Id. at 19. This concluded the second round of grievances.

Reimers acknowledges that Lebarr exhausted an allegation that doctors recommended keloid-removal surgery and that later physicians (i.e., the regional medical directors) said surgery was unnecessary. Motion to Dismiss at 7 (citing Motion Exhibit A).[4] But Reimers argues that Lebarr failed to exhaust administrative remedies as it relates to the claim against him because none of Lebarr's grievances named Reimers or any policy related to keloid treatment. Id. Binding precedent forecloses these arguments. "A prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." Parzyck, 627 F.3d at 1218 (citing Jones, 549 U.S. at 219). Thus, that none of Lebarr's grievances identified Reimers by name does not defeat exhaustion. And "while § 1997e(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require that he do more than that." Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000). A key purpose of the PLRA's exhaustion requirement, as well as Florida's administrative grievance procedure, is to alert prison officials

---

[4]     Reimers does not argue that Lebarr's first round of grievances was not properly exhausted based on the Bureau of Inmate Grievance Appeals' ruling that the informal grievance was untimely. (See Doc. 22 at 13). Because Reimers does not raise that argument, the Court does not address it here.

to a problem and to give them an opportunity to address complaints internally before the initiation of a lawsuit. <u>Parzyck</u>, 627 F.3d at 1219 (citing <u>Jones</u>, 549 U.S. at 219; <u>Woodford</u>, 548 U.S. at 93); Fla. Admin. Code § 33-103.001(1). So although none of Lebarr's grievances specified an FDOC policy as the culprit, he grieved that the physicians who evaluated him recommended surgery and that the regional medical directors overrode that recommendation. Lebarr gave FDOC officials enough information to alert them that he was grieving the adequacy of his keloids treatment, and that higher ranking officials were responsible for the problem he was grieving. Accordingly, Lebarr did enough to exhaust available administrative remedies relating to his claim against Reimers for an alleged policy of deliberate indifference to keloid scars.

## V.    Whether Plaintiff Fails to State a Claim Against Reimers

Taking the allegations in the Complaint as true, and construing them in the light most favorable to Lebarr, the Complaint fails to state a claim of deliberate indifference against Defendant Reimers.

### A. Law

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while incarcerated. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994). Because Lebarr was a convicted

prisoner at the time of the alleged deprivation, his rights arise under the Eighth

Amendment.

> The Eighth Amendment's prohibition against "cruel and unusual punishments" protects a prisoner from "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). To state a claim of unconstitutionally inadequate medical treatment, a prisoner must establish "an objectively serious [medical] need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." Taylor v. Adams, 221 F.3d 1254, 1258 (11th Cir. 2000).

Kuhne v. Fla. Dep't of Corr., 745 F.3d 1091, 1094 (11th Cir. 2014).

> A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition.

Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (quoting Hill v.

Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994), overruled in

part on other grounds by Hope v. Pelzer, 536 U.S. 730 (2002)).

To demonstrate deliberate indifference to a serious medical need, a

plaintiff must satisfy both an objective and a subjective inquiry. See Brown v.

Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004) (citation omitted). The plaintiff

must shoulder three burdens: (1) he must show he suffered from an objectively

serious medical need (the objective component); (2) he must show that the

official acted with deliberate indifference to a serious medical need (the

subjective component); and (3) he must show that the Defendant's deliberate

indifference caused his injury. Mann, 588 F.3d at 1306-07. To prove the subjective component of deliberate indifference, a plaintiff must demonstrate: (1) the official's subjective knowledge of a risk of serious harm, (2) the official's disregard of that risk, (3) by conduct that is more than mere negligence. Daniels v. Jacobs, 753 F. App'x 748, 757 (11th Cir. 2018) (citing Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016)); see also Nam Dang, by and through Vina Dang v. Sheriff, Seminole Cnty., Fla., 871 F.3d 1272, 1280 (11th Cir. 2017) (a pretrial detainee must prove the same three factors to establish a claim for deliberate indifference).

A plaintiff must show that a defendant's response to the plaintiff's medical needs was poor enough to constitute unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligent treatment, or even medical malpractice actionable under state law. Taylor, 221 F.3d at 1258 (citing Estelle, 429 U.S. at 105-06). It is important to recognize:

> "medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference." Mandel v. Doe, 888 F.2d 783, 789 (11th Cir. 1989) (citations omitted). However, medical treatment violates the Constitution only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986) (citation omitted).

Nam Dang, 871 F.3d at 1280. In the prison context, the Court must consider whether the matter is one of professional medical judgment. Beard v. Banks, 548 U.S. 521, 530 (2006). If it is a matter of professional judgment – for example,

a decision not to pursue a particular course of diagnosis or treatment – it does not represent cruel and unusual punishment. <u>Estelle</u>, 429 U.S. at 107–08. Federal courts "are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1507 (11th Cir. 1991) (quoting <u>Westlake v. Lucas</u>, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).

Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on a theory of respondeat superior or vicarious liability. <u>Keith v. DeKalb Cnty., Ga.</u>, 749 F.3d 1034, 1047 (11th Cir. 2014) (citing <u>Cottone v. Jenne</u>, 326 F.3d 1352, 1360 (11th Cir. 2003)). "Instead, to hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." <u>Id.</u> at 1047–48. Absent direct participation by the supervisor, a plaintiff can establish the requisite causal connection in one of three ways: (1) "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," <u>Gonzalez v. Reno</u>, 325 F.3d 1228, 1234 (11th Cir. 2003); (2) when a supervisor's custom or policy, or absence of a policy, results in a violation of constitutional rights, <u>Piazza v. Jefferson Cnty., Ala.</u>, 923 F.3d 947, 957 (11th Cir. 2019); or (3) when facts support "an inference that the supervisor directed the subordinates to act

18

unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so," Gonzalez, 325 F.3d at 1235 (citing Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1561 (11th Cir. 1993)). See also Cottone, 326 F.3d at 1360. The standard by which a supervisor is held liable for the actions of a subordinate is "extremely rigorous." Braddy v. Fla. Dep't of Lab. & Emp. Sec., 133 F.3d 797, 802 (11th Cir. 1998).

### B. Defendant Thomas Reimers

Reimers is the Health Services Director for the FDOC. In that capacity, he oversees the delivery of healthcare services to inmates in the FDOC's custody. There is no claim that Reimers was personally involved in making decisions about Lebarr's treatment for keloid scars. So, for Reimers to be liable, Lebarr must show "that a causal connection exists between the supervisor's actions and the alleged constitutional violation." Keith, 749 F.3d at 1047–48.

Reimers argues that Lebarr fails in two ways to allege a constitutional violation against him. First, Reimers contends that Lebarr's allegations fail to state a claim for deliberate indifference to a serious medical need. Motion to Dismiss at 8–9. Instead, Reimers argues, the allegations show only a difference in medical opinion between medical staff and the inmate about the best course of treatment for his keloids. Second, Reimers contends that Lebarr fails to establish a claim against him for supervisory liability. Id. at 9–10. Reimers

argues that Lebarr "does not allege any facts to support the existence of, or from which to reasonably infer the existence of, a widespread abuse; a custom or policy that resulted in a constitutional violation; or that [Reimers] instructed the treating physicians to act unlawfully or knew they would do so and failed to stop them." Id. at 10. Without deciding the first point, the Court agrees with Reimers on the second.

Lebarr alleges that Reimers is liable because he had policies that imposed "strict measure[s] for the treatment of keloids." Complaint ¶ 28. But Lebarr offers little more than that. He does not identify or describe an official policy that Reimers adopted related to keloids. Lebarr alleges that unnamed medical personnel described surgical treatment for keloids as "cosmetic," id. ¶ 29, and that Reimers "is responsible for the overall direction for [the FDOC] and set[s] the provisional health care provided to inmates," id. ¶ 30.

The Court assumes that Lebarr's keloids were a serious medical need. That said, the conclusory allegations against Reimers do not state a claim for supervisory liability based on a policy or custom. "Demonstrating a policy or custom requires 'show[ing] a persistent and wide-spread practice.'" Goebert, 510 F.3d at 1332 (quoting Depew v. City of St. Mary's, Ga., 787 F.2d 1496, 1499 (11th Cir. 1986)). "A plaintiff can only allege the existence of a policy or custom by 'pointing to multiple incidents or multiple reports of prior misconduct by a particular employee.'" Henley v. Payne, 945 F.3d 1320, 1331 (11th Cir. 2019)

(alteration adopted) (quoting <u>Piazza</u>, 923 F.3d at 957). "'A single incident of a constitutional violation is insufficient to prove a policy or custom even when the incident involves several subordinates.'" <u>Piazza</u>, 923 F.3d at 957 (alteration adopted) (quoting <u>Craig v. Floyd Cnty.</u>, 643 F.3d 1306, 1312 (11th Cir. 2011)). In <u>Goebert v. Lee County</u>, for example, the Eleventh Circuit held that a plaintiff failed to meet the rigorous standard for supervisory liability when she failed to show that any other inmates had suffered the same alleged violation that she had. 510 F.3d at 1332.

Lebarr's Complaint does not point to multiple incidents or a persistent and widespread practice of FDOC staff exhibiting deliberate indifference to the needs of inmates who have keloids. Lebarr alleges that Reimers implemented a policy that placed "strict measure[s] for the treatment of keloids" and that Reimers was responsible for healthcare policy at FDOC. Complaint ¶¶ 28, 30. But merely imposing "strict measure[s]" for the treatment of keloids – particularly through surgery – is not by itself unreasonable or "facially unconstitutional." <u>Goebert</u>, 510 F.3d at 1332 (jail's policy of not allowing inmates to lie down at their leisure during the daytime was not "facially unconstitutional"). "[S]upervisory liability for deliberate indifference based on the implementation of a facially constitutional policy requires the plaintiff to show that the defendant had actual or constructive notice of a flagrant, persistent pattern of violations." <u>Id.</u> (citing <u>West v. Tillman</u>, 496 F.3d 1321, 1329

(11th Cir. 2007)). The basis of Lebarr's Complaint is that on two occasions seven months apart – in October 2017 and May 2018 – a physician examined him and requested a surgical consultation to remove keloid scars, but the relevant regional medical director denied each request, recommending steroid injections instead. Lebarr acknowledges receiving the recommended steroid injections. Even if these incidents suggested deliberate indifference by the regional medical directors, Lebarr does not point to any similar incidents involving other inmates with keloids. Lebarr also does not allege that Reimers was aware of any such events, or that Reimers knew about the events involving Lebarr. "Two incidents, occurring [several] months apart," especially if the supervisory official was unaware of them, "are insufficient to establish a custom" or policy. Wakefield v. City of Pembroke Pines, 269 F. App'x 936, 940 (11th Cir. 2008); Denham v. Corizon Health, Inc., 675 F. App'x 935, 942–43 (11th Cir. 2017).

Nor does Lebarr allege any facts supporting an inference that the regional medical directors' decisions were traceable to any policy that Reimers implemented. Only in his Response does Lebarr state that the regional medical directors relied on a policy promulgated by Reimers in denying the treating physicians' recommendation for surgery. Response (Doc. 26) at ECF p. 2 ¶ 12, p. 7.[5] In support of these assertions, Lebarr cites Exhibits B and C to his

---

[5]    A plaintiff cannot use a response to a motion to dismiss to amend his or her complaint. See Jallali v. Nova Southeastern Univ., Inc., 486 F. App'x 765, 767 (11th Cir. 2012) (citing Fin. Sec. Assur., Inc., 500 F.3d at 1284).

Response, but neither exhibit mentions any health services policy as the reason why the regional medical directors did not approve surgery earlier. Lebarr also refers to paragraph 17 of his Complaint. But in paragraph 17 of the Complaint, Lebarr simply alleges: "On or about May 22, 2018 the Defendant Jane Doe denied [Dr. Lopez-Rivera's] recommendation and recommended steroid injection as an alternative treatment citing the likelihood of [keloids] reoccurring and primary 'cosmetic.'" Complaint ¶ 17 (sic); see also Doc. 26-3 (Pl. Ex. C). Nothing in this allegation suggests that Jane Doe relied on a policy that Reimers promulgated. In fact, it shows the opposite: that Jane Doe's decision depended on her own medical judgment, not on any FDOC policy, because in her view (1) the keloids were likely to recur even with surgery; (2) Lebarr's condition was mainly cosmetic, at least when Jane Doe denied the request; and (3) an alternative to surgery (steroid injections) was available.

Lebarr's allegations contradict his claim against Reimers in another way. He acknowledges that in 2019, Jane Doe approved his second request to her for keloid-removal surgery after the treating physician submitted documentation showing that the keloids had become enlarged and were displacing Lebarr's earlobe. See Complaint ¶¶ 19–20; see also Doc. 26-2 (Pl. Ex. B) at ECF p. 4. Lebarr does not deny that he subsequently received surgery to remove the keloids. These facts contradict his allegation that Reimers promulgated or enforced a policy of deliberate indifference to keloid scars.

Lebarr's unadorned allegation that Reimers maintained a restrictive policy concerning the treatment of keloids fails to state a claim of supervisory liability for deliberate indifference. "Because [Lebarr's] complaint contains only conclusory assertions that [Reimers was] indifferent to [Lebarr's] needs pursuant to certain policies or customs—without alleging any facts concerning those policies or customs—he has not stated a claim for supervisory liability for deliberate indifference to serious medical needs." <u>Piazza</u>, 923 F.3d at 958. Thus, the supervisory liability claim against Reimers is due to be dismissed under Rule 12(b)(6).

## C. Defendants John Doe and Jane Doe

In his first two counts, Lebarr alleges that John Doe and Jane Doe – two regional medical directors – were deliberately indifferent to his keloid condition because they overrode the treating physician's request for a surgical consultation. Instead, John Doe and Jane Doe recommended steroid injections as an alternative. Lebarr has not yet served John Doe and Jane Doe because their identifications are pending discovery. Thus, these Defendants have not responded to the Complaint.

This action will remain pending against these two individuals so Lebarr can learn their identities through discovery. Within 10 days of the discovery deadline, to be set by a different order, Lebarr must file a notice with

information to enable service of process on the Doe Defendants. After service of process, the Doe Defendants will be able to respond to the Complaint.

## VI.   Lebarr's Motion to Strike (Doc. 26)

Lebarr moves to strike Reimers's Motion to Dismiss under Rule 12(f) of the Federal Rules of Civil Procedure, arguing that Reimers "has presented an insufficient defense." Response (Doc. 26) at p. 1. Under Rule 12, a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). As the foregoing discussion shows, the Court does not find that Reimers failed to present a sufficient defense. The Motion to Strike Reimers's Motion to Dismiss will therefore be denied.

Accordingly, it is hereby **ORDERED:**

1. Defendant Thomas Reimers's Motion to Dismiss Plaintiff's Complaint (Doc. 22) is **GRANTED** to the extent that this action is **DISMISSED** as to Defendant Reimers.

2. The Complaint remains pending against Defendants John Doe and Jane Doe. By a separate order, the Court will set deadlines for discovery and service of process.

3.  Plaintiff Dwayne Lebarr's Motion to Strike (Doc. 26) Defendant Reimers's

    Motion to Dismiss is **DENIED**.

       **DONE AND ORDERED** in Jacksonville, Florida this 2nd day of August,

2021.

 

BRIAN J. DAVIS
United States District Judge

lc 19

Copies:
Counsel and parties of record